# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| CAROL WOOD MITCHELL, Trustee | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CASE NO. 4:09cv302 |
| | § | |
| JOEL STRINGFELLOW | § | |
| | § | |
| Defendant. | § | |

## FINDING OF FACTS, CONCLUSIONS OF LAW, MEMORANDUM OPINION AND ORDER

Plaintiff, Carol Mitchell as Trustee, filed this suit seeking to enforce a judgment on property owned by the Defendant Joel Stringfellow. Stringfellow owns approximately 95 acres in Grayson County, Texas. Stringfellow lives on the property in a trailer house. Terry Stringfellow, his wife, also lives on the property. All parties agree that the property is rural in that it is not in the extraterritorial limits of a village, town, or other municipality. The parties consented to a trial before the undersigned and waived their right to a trial by jury. After considering the evidence presented herein, the Court finds that Plaintiff Mitchell is entitled to enforce her lien on the property for the reasons expressed herein.

In 2003, Terry Stringfellow was the principal operator of two companies, Sioux Redi-Mix, Inc. and Sioux Aggregates, Inc. Both companies sought Chapter 11 protection in 2003. According to the testimony in this case, the Chapter 11 case was converted to a Chapter 7 when Stringfellow and his wife, Terry, refused to adhere to their Chapter 11 responsibilities. Testimony established that

1

the companies paid mortgages on property owned by the Stringfellows, including the Grayson County property which is, in effect, a sand pit with a double-wide home placed near the property's entrance. The Trustee sued Stringfellow in an adversarial proceeding and obtained a judgment from the Court finding Joel Stringfellow liable for $135,988.56 for pre-petition transfers and $550,651.19 for post-petition transfers (Plaintiff's Ex. 2). The Court also awarded judgment against Stringfellow in that the transfers of real property located in Oklahoma and the Grayson County sand pit were "avoided" (Plaintiff's Ex. 2). The Court made an explicit finding that the Bryan County, Oklahoma, property was Stringfellow's homestead (Plaintiff's Ex. 3). This finding was made after the Court heard evidence in the case and made the following findings: "The Debtors made the mortgage payments on the Denison sand pit while operating the property, paying for the sand retrieved from the property, and paying a salary to the Defendant (Stringfellow)" (Plaintiff's Ex. 3). The Bankruptcy Court found fraudulent intent and avoided the transfers of the properties.

Stringfellow acquired the Grayson County property in 2002 (Defendant's Ex. 1). On February 20, 2006, he transferred the property to North Texas Sand Farms, Inc (Defendant's Ex. 6). On the Deed, he explicitly disclaims any homestead interest in the property. Some months later, North Texas Sand Farms deeded the property back to Stringfellow (Defendant's Ex. 7). He testified that North Texas Sand Farms could not make the payments on the note but continued to operate under an oral lease on the property. Stringfellow testified that he was a manager for North Texas Sand Farms and that he was paid a salary. He also testified that he sold materials from his property. His tax returns reflect over $200,000 in gross receipts each year for the last three years – or put

another way, he has been selling a lot of dirt (Defendant's Ex. 13-16).

Sensing things did not bode well for him in the adversarial proceeding, Joel Stringfellow crossed the Red River and filed a homestead designation on the Texas Sand Pit property (Defendant's Ex. 8). He also moved a camper trailer on the property, and later in March 2007, upgraded to a double-wide trailer home. The homestead designation occurred when he was a defendant in the bankruptcy proceeding.

The Bankruptcy Court took a dim view of Joel Stringfellow's actions, as did the United States Attorney for the Eastern District of Oklahoma. The Stringfellows were convicted of several counts of fraud arising out of their bankruptcy shenanigans (Plaintiff's Ex. 20-21). The Court has no doubt, after considering the testimony, that Joel Stringfellow is not credible and that the only reason for moving to Texas was to continue the pattern of avoidance and evasion practiced by him and his wife for a number of years. However, the question is, notwithstanding this finding, does Texas' liberal homestead law provide Joel Stringfellow a place of repose on his Texas Sand Pit property?

Texas Property Code Section 41.002(b) defines a rural homestead as one used for the purposes of a rural home and in the case of a family it may not exceed 200 acres. *See* TEX. PROP. CODE ANN. § 41.002(b). Courts construe homestead laws generously, but such interpretation should not be stretched to the incredulous requiring the courts to protect as homestead that which is not. *See Whiteman v. Burkley*, 282 S.W. 788 (Tex. 1926). A family may not have more than one homestead. *Silvers v. Welch*, 91 S.W. 2d 686, 687-88 (Tex. 1936). Likewise, no specific writing

is needed to claim a homestead. *See Dodd v. Harper*, 670 S.W.2d 646, 649 (Tex. App. – Houston [1st Dist] 1983, no writ).

Although Texas has almost a two-hundred year history of homestead protection, there is no single or exclusive definition for homestead. To be a homestead, improvements on the land must be intended to be a permanent addition to the land. *Sonnier v. Chisholm-Ryder Co.*, 909 S.W. 2d 475, 479 (Tex. 1995). Therefore, if Stringfellow's claim to rural homestead is valid, then the mobile home would also enjoy homestead protection as an improvement. *See Norris v. Thomas*, 215 S.W.3d 851 (Tex. 2007). The object of the homestead Constitutional exemption is to secure an asylum free from the assaults of creditors; a home for the shelter and protection of the family. *Franklin v. Coffee*, 18 Tex. 413 (Tex. 1857). Likewise, once the homestead character has attached to the realty and the family relationship continues to exist, it can be terminated by abandonment or sale. *See Hollifield v. Hilton*, 515 S.W.2d 717 (Tex. Civ. App.– Fort Worth, 1974, writ ref. n.r.e.) It may also be terminated by alienation regardless of whether the grantor retains possession of property. *See In re Perry*, 345 F.3d 303 (5th Cir. 2003).

Whether business is conducted on the rural homestead does not necessarily destroy its homestead character. *See Davis v. Hawn Lumber Co.*, 193 S.W.2d 263 (Tex.Civ.App.– Dallas 1946, no writ). In Texas,

> "It is the place of the homestead that gives character to it, not the business of the head of the family. If it be in the country, it is a rural homestead; if it be in a city, it is an urban residence."

*Id; see also Posey v. Bass*, 14 S.W. 156 (Tex. 1890). The Fifth Circuit has also recognized

that the business element has historically been embedded within the definition of a rural homestead. *In re Perry*, 345 F.3d at 303. The rural homestead exemption encompasses up to 200 acres of land in order to enable the debtor to support his family. *See Foust v. Sanger*, 35 S.W. 404, 405 (Tex. Civ. App. 1896).

So far, the factors seem to favor the Stringfellows. Yet, the Fifth Circuit noted and cited a number of cases dealing with the issue of abandonment – particularly when the property is leased, as the Sand Pit property in this case has been. *See, e.g., Wynne,* 17 S.W. at 112-13; *Blum v. Rogers,* 15 S.W. 115, 117 (Tex. 1890); *Mays v. Mays,* 43 S.W.2d 148 (Tex. Civ. App. 1931)*; Atwood v. Guaranty Const. Co.,* 63 S.W.2d 685 (Tex. Comm. App. 1933); *Uvalde Rock Asphalt Co. v. Warren,* 127 Tex. 137, 91 S.W.2d 321, 324 (1936); *Jefferson Standard Life Ins. Co. v. Lindsey,* 94 S.W.2d 549, 552 (Tex. Civ. App. 1936); *Yates v. Home Building & Loan Co.,* 103 S.W.2d 1081, 1085 (Tex. Civ. App. 1937); *Texas Building & Mortgage Co. v. Morris*, 123 S.W.2d 365, 371 (Tex. 1938).

In this case, the Court heard evidence that the property has been leased to North Texas Sand Farm. In fact, the video of the property reflects that it is the business of North Texas Sand Farm (Plaintiff's Ex. 5). A sign in front of the property prominently notes that the property is the business of North Texas Sand Farm. On the property are heavy equipment and a plant for processing the sand. The property is pockmarked with cavernous pits, and by Stringfellow's testimony, approximately 70 % of the property has been mined. There was no testimony that the land could be converted to its prior agricultural use. Here, Stringfellow

5

has given North Texas Sand Farms a permanent oral lease to use the property. For some period of time, he also received a salary from North Texas Sand Farms. According to Stringfellow, North Texas Sand Farms derives income from the property that is not shared with him. The sand operations were also begun at a time that Stringfellow claimed no homestead interest in the property, and, in fact, when he claimed that Oklahoma was his homestead.

According to Stringfellow's tax returns, his home address is a post office box number in Denison, Texas. His testimony is that the post office will not deliver mail on unimproved roads.

What is the principal use of the property? The main purpose is to produce income, and the family use is not only secondary and subordinate, but of trivial importance. *See Blum v. Rogers,* 78 Tex. 530, 15 S.W. 115, 117 (1890).

Here, testimony indicated that to get on the property one had to follow certain OSHA regulations. Visiting the "homestead" necessitated the wearing of a hard hat. No one could come on the property unless "escorted" for safety reasons – not the type of a rural homestead contemplated by our founding framers. As the Texas Supreme Court noted in *Blum*, the concept of a homestead should not be used as a mere cover for shielding property from being subjected to the payment of honest debts. *Id.* Here, it is clear that Stringfellow is continuing his prior practices and will deplete the property to a worthless piece of land incapable of being reclaimed – all of this at the expense of his creditors.

As to use and enjoyment, Stringfellow testified that he uses the property for hunting snakes with a BB gun. He tried to grow tomatoes in sandy soil but failed. He either lied to the Court or to the IRS in claiming that he did not invest in heavy equipment for his business. In 2007, he purchased and put into service $118,573 of heavy equipment (Plaintiff's Ex. 14). In analyzing his last four years of tax returns, Stringfellow has claimed losses of over $1.2 million dollars in adjusted gross income. He has never made a profit, or at least that is what he has told the IRS.

The Court finds that its decision may rest on the fact that depletion of surface minerals amounts to an abandonment of the property. What is taken is the property. Unlike oil and gas minerals, those minerals taken from the surface destroy the very nature of the property. What was once rural is now wasteland. If the Court is to be guided that the purpose of the homestead laws is to provide a place of repose for the household, it can hardly be said that destruction of the surface promotes the sanctity of the character of the property. Stringfellow allowed North Texas Sand Farms to use the entire property for its operations. Such was sufficient to constitute abandonment.

Other factors also warrant a finding that the property was not truly an intended homestead. In his criminal trial, Stringfellow testified that the Texas Sand Pit property was purchased to sell sand to the debtors in possession as well as other companies. He operated the company as Stringfellow Sand (Defendant's Ex. 17/742). He testified that he did not bill the debtors in possession since he was contributing sand to help in the start-up operations.

He testified that he made payments to Grayson County Electric Coop. to get the meter turned on to the Sand Pit property, which he identified as the Sioux Aggregates operation (Defendant's Ex. 17/698). He rented the Sand Pit to Sioux Aggregates and was paid rent, whether sand was mined or not (Defendant's Ex. 17/699).

After the adversary trial, he deeded his Oklahoma homestead to his son. The return address on the Deed contains his Oklahoma address (Defendant's Ex. 9). The Deed is acknowledged by Terry Stringfellow, a Texas notary, attesting that she is a notary for Oklahoma. Further, there is clear evidence that in 2006 she was living in Oklahoma. A notary public who removes her residence from Texas vacates that office. TEX. GOV'T. CODE § 406.020. Plaintiff's Exhibit 6 reflects income to Joel Stringfellow from Chroma Operating Inc. The date of the revenue summary is more than three years after Stringfellow moves across the Red River, yet Stringfellow's address is listed as Platter, Oklahoma. More telling, is the fact that, in his bankruptcy pre-trial order he admits that the Platter property is his homestead.

The Court is left with no other impression that Oklahoma, for several years, was his homestead. When confronted with mounting pressure from the Trustee, Stringfellow deeded the Oklahoma property to his son to deprive creditors of an opportunity to foreclose on the Texas Sand Pit property which was and had always been under a lease for mining operations. He has continued to deplete the land by mining operations under various leases with no intent to reclaim. Under these circumstances, the Court finds that there was no intent to establish

a homestead as that term was contemplated by the Constitutional framers.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Carol Mitchell have judgment for all claims raised herein against the Defendant Joel Stringfellow and have all writs and processes necessary to effect the judgment herein.

Within ten days of the date of this Order, Plaintiff shall submit a proposed final judgment in accordance with this Order.

**SO ORDERED.**

**SIGNED this 23rd day of November, 2010.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE